**Harry L. ARMSTRONG, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 25, 1974.

Rehearing Denied Jan. 24, 1975.

Caldwell v. Bethlehem Mines Corporation, Ky., 455 S.W.2d 67 (1970).

Thomas Osborne, Keith, Scent, Osborne & Deatherage, Hopkinsville, for appellant.

Ed W. Hancock, Atty. Gen., George Geoghegan, III, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

Willie D. Robinson and Harry L. Armstrong were jointly indicted, tried, convicted and sentenced to 5 years' imprisonment each for selling heroin. KRS 218A.-010(10), 218A.050(2), and 218A.990(1). Armstrong appeals.

Armed with a search warrant, police officers of the City of Hopkinsville found and seized a quantity of heroin in a local motel room occupied by a man named James Michael White, whom they arrested. On the next day White told Captain James Boyd, a police detective, that he had obtained the heroin from a person in nearby Nashville, Tennessee, and indicated that he could get some more from the same source. The officers took White back to the motel. When they arrived, there was a message at the desk for White to call someone named Danny. From his room at the motel and in the presence of the officers he placed a call to a telephone in Nashville listed in the name of Harry's Gulf service station. The officers heard him ask for Danny and then speak to someone he called by the name Danny, identifying himself as Michael. White's end of the conversation, as heard by the officers, was about as follows: "Do you have any stuff? I want some . . . . About two spoons . . . Same place . . . . O.K." After hanging up the telephone he told the officers that the person to whom he had been talking would arrive in about two hours.

The officers furnished White with $450 in identified bills, searched the room and bathroom to establish the absence of any narcotics and occupied an adjoining room into which they later withdrew when they observed the approach of two black men.

The two men in question were Robinson and Armstrong. White admitted them into his room, and the officers heard one of them say that "the stuff" was downstairs, whereupon White left the room for a few minutes and then returned. At a prearranged signal from White the officers entered the room, where they found Robinson in the process of counting $410 of the money they had provided to White. Shortly thereafter they recovered 17 packets of heroin secreted in the ceiling over the bathtub. This was the same hiding place in which heroin had been discovered during the previous search, and it had been checked out by the officers before they left the room as Robinson and Armstrong approached.

Testifying in his own defense, Armstrong said he had a date on the evening in question with a lady friend who worked at Fort Campbell and that he was going there to pick her up. Robinson worked part-time at his service station and asked for a ride. Armstrong acquiesced and took Robinson to Hopkinsville, where Robinson said he was going in order to get some money. Armstrong was to bring Robinson back to Fort Campbell, where Robinson planned to take a bus and return to Nashville. Armstrong did not know White, but accompanied Robinson to his room. Armstrong's automobile was a $10,000 1973-model Cadillac Fleetwood. He owned and operated a gasoline service station and his wife earned $600 per month. He said he was buying the automobile mostly out of the wife's earnings. He disclaimed any knowledge that Robinson's meeting White had a criminal purpose.

■ Armstrong's first contention is that the evidence was not sufficient to support his conviction. We think it clearly was. He brought Robinson to Hopkinsville and was with him when the sale was made. The jury was not bound to believe his explanation of these otherwise inculpatory circumstances.

■ The second point is that the testimony of the police officers relating their transactions with White and the substance of White's end of the conversation on the telephone was inadmissible hearsay. White did not testify at the trial. Both the trial court and the Commonwealth relied on Jett v. Commonwealth, Ky., 436 S.W.2d 788

(1969), by reason of the fact that White was in the local jail and in that sense was "available" for cross-examination. That is an utter misconception. *Jett* has no application for the simple reason that White did not in fact testify and thus no foundation could be laid as required by CR 43.08. See *Jett* at 436 S.W.2d 792. There is, nevertheless, a good and sufficient reason why the evidence in question was competent, and that is because the words as well as the acts of White were part of a relevant *course of events* observed by the witnesses. Events do not exclude the spoken word.

"The prohibition of the Hearsay rule, then *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted."* Wigmore on Evidence (3d ed. 1940), § 1766 (Vol. VI, p. 178).

White's extrajudicial utterances had no testimonial import. Had he made some such statement as, "I am calling up a man named Danny Robinson. He pushes dope for a fellow named Harry Armstrong," it would have had a definite testimonial effect and, even though spoken in the course of relevant acts and conduct, might very well have been inadmissible, but that is a subject we need not reach and therefore leave for another day as the occasion may arise.

■ The testimony of the hotel clerk to the effect that she took a message to tell White that "Danny called" falls in much the same category. She did not say she knew Danny, or seek to identify him as the person who called. That she had received a call from someone who left word for White "to call Danny" was just a fact, an event, and was admissible in evidence as such. It is not necessary to masquerade it under some artful theory such as the shopbook rule, as suggested by the Commonwealth.

■ In his closing argument to the jury the Commonwealth's Attorney commented to the effect that he had known and worked with Officer Boyd for a long time, that he was honest and conscientious, and that his word was worthy of belief. We concede that it was improper for counsel to utilize this unauthorized means of attesting the witness's credibility. However, we are not persuaded that it really could have had a prejudicial effect.

■■ The trial court denied a defense motion for separation of the witnesses under RCr 9.48. As the Commonwealth argues, this is a discretionary matter with the court. We reiterate that for purposes of this procedural rule one is not an officer of the court merely because he is a police or peace officer, cf. Webster v. Com., Ky., 508 S.W.2d 33 (1974), but, as in that case, we are not convinced that there is any substantial possibility of consequential prejudice in this instance.

■ Appellant further contends that the jury should have been instructed as follows:

"Circumstantial evidence may be the basis of a conviction. However, if the evidence is as consistent with innocence as it is with guilt, then you shall find the defendant not guilty."

Unquestionably this is a good statement of abstract legal principle, but as clearly implied by the cited portion of the text material in Stanley's Instructions to Juries (§ 783), the test must be applied as a matter of law before the case is submitted to the jury, and is not to be resolved by the jury itself. Such an instruction would violate the fundamental principle that "the court should never give an instruction as to any class of evidence or as to the weight to be accorded the evidence relating to any particular matter." *Ibid.,* § 782; Wolf v. Com., 214 Ky. 544, 283 S.W. 385, 388 (1926).

■ The last point is that the jury should have been instructed on the defense

of entrapment—that in fact a verdict of acquittal should have been directed on that ground. Suffice it to say that in our opinion the role played by the law officers in this instance could not by any stretch of the imagination be classified as entrapment.

The judgment is affirmed.

JONES, MILLIKEN, PALMORE, REED, STEINFELD and STEPHENSON, JJ., concur.

OSBORNE, C. J., not sitting.