**Charlie MAYNARD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 11, 1977.

Irvin D. Foley, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellee.

Before HAYES, HOGGE and LESTER, JJ.

HAYES, Judge.

The appellant, Charlie Maynard, was indicted by the Russell County Grand Jury for violation of KRS 506.030, for soliciting the murder of Russell Circuit Judge Leonard F. Wilson. Maynard was found guilty by a jury and the minimum sentence of ten (10) years was assessed. He appeals from the judgment of Russell Circuit Court assigning as reversible error, among other things, the trial court's admission into evidence:

(1) The hearsay testimony of an F.B.I. Agent as to conversations between Maynard and one Norwood Jones, deceased, which violated Maynard's right to confrontation as guaranteed by the 6th Amendment of the U.S. Constitution.

(2) The hearsay testimony of Judge Wilson as to the threats made on his life.

(3) Taped recordings of conversations between Maynard and the deceased Jones.

It is necessary that we set forth in more detail than usual the factual circumstances in order to assess the impact of the challenged testimony on the total evidence introduced against the appellant Maynard. A review of the evidence against Maynard demonstrates the Commonwealth's case against him was highly circumstantial and consisted mainly of testimony by law enforcement personnel, who had no personal knowledge of the circumstances of the

charge against Maynard. The only other evidence was portions of a tape recording of conversations on two occasions between Maynard and Norwood Jones, who died before trial.

On the day of trial, October 25, 1976, and before, the attorney for Maynard made numerous objections to the testimony by F.B.I. Agent, Eugene N. Thomeczek concerning conversations the agent had with his informer, Jones. Over these objections, Thomeczek was permitted to testify as follows:

Q. When did you first come into contact with Norwood Elmer Jones?

A. Mr. Jones came to the Louisville office on December 5, 1975, and said he wanted to report a possible violation of Federal law.

Q. Since your meeting with Jones in December of last year, from your own personal knowledge tell the Court and Jury if Jones is now living or dead.

A. Jones is now deceased.

Q. Did you have on the 5th day of December, 1975 a conversation relating to a purported crime against Leonard Wilson?

A. I did.

Q. Would you please tell this Jury what Mr. Jones said to you concerning the commission of a crime against Leonard Wilson?

OBJECTION BY MR. FOLEY: Your Honor at this point we will object on the basis that the testimony is hearsay, and not under oath. Mr. Jones was not under oath at the time he made these statements. His statements are not subject to cross examination, and should this testimony be permitted, then I move for a mistrial.

BY THE COURT: As we have gone into this matter a number of times, and the Court's ruling still stands that the objection is overruled.

Q. With that in mind proceed to relate the conversation that you had with Mr. Jones.

A. Mr. Jones told me on December 5, 1975 that he was acquainted, uh, he was staying at the Dismas House, which is a pre-release guidance center in Louisville with an individual by the name of Earl Conover. And that in approximately the first part of October, 1975 Conover had come to Jones and asked him if he would like to earn some money. That he thought maybe he could set up a way they could get some money. Jones said he was interested, and subsequently he and Conover traveled to Jamestown, Kentucky where they met with Charlie Maynard. During this meeting Mr. Maynard discussed the fact that Judge Leonard Wilson was the only candidate at that time for the Circuit Judge in Russell County, or for Russell and the other counties, and that if he was elected, that he would put Mr. Maynard out of business, and . . .

Q. Excuse me, what kind of business was he suppose to have been engaged in?

A. He was a bootlegger, and according to Mr. Jones Mr. Maynard told him that Mr. Wilson if he was elected Judge, and he most assuredly would be since he was the only candidate, he said he had campaigned that he was going to stop bootlegging in Russell County, and Mr. Maynard felt if he did so, and if he stopped, if Judge Wilson stopped Mr. Maynard from bootlegging he would of course not have a source of income. He, during either this trip, or a subsequent trip, offered Mr. Jones and Mr. Conover $2,000.00 to kill Judge Wilson. He told them that he wanted this accomplished before Judge Wilson took office, which I believe was January 6th of this year, and that he would give them the weapons to do so. During the second trip he gave Mr. Conover and Mr. Jones a .30 caliber carbine, which Mr. Maynard told them was fully automatic.

Special Agent Thomeczek then related that he had a tape recording device placed upon the person of the informant Jones. Jones went to Jamestown, Kentucky, and attempted to engage Maynard into a conversation that would in effect verify the conversations Jones previously had with Agent Thomeczek.

Jones also carried a transmitter on his person during these taped conversations with Maynard. F.B.I. Agents, including Thomeczek, and state police officers listened to the conversations between Jones and Maynard. The officers were secreted in automobiles some distance from the actual presence of Maynard and Jones.

The tape recordings of the Maynard-Jones conversations generally verified that Jones and one Earl Conover had received guns from Maynard and they discussed hand grenades that could be thrown into Wilson's office.

Armed with this information Agent Thomeczek went before the Russell County Grand Jury on February 11, 1976, and obtained an indictment against Maynard for soliciting Jones and Conover to murder Judge Wilson. Norwood Jones, the informer, was himself murdered on February 11, 1976, at Paducah, Kentucky. He had been strangulated with a coat hanger. Jones's death apparently had no connection with his acquaintance with Maynard.

We perceive the issues in this case to be threefold:

(1) Was the F.B.I. agent's testimony of conversations he had with his informant, Jones, about Maynard prejudicial to Maynard, or stated another way, were these conversations offered by the Commonwealth for their testimonial import?

(2) If the testimony of the F.B.I. agent was prejudicial or was offered by the Commonwealth for the truth of the matter asserted, then was there a violation of the Confrontation Clause of the 6th Amendment to the U.S. Constitution?

(3) If the admission of the testimony was in violation of the Confrontation Clause, was it still properly admitted under a valid exception to the hearsay rule of evidence?

The Commonwealth contends that the testimony of the F.B.I. agent was admissible either because: (A) Even if it was hearsay, it was properly admitted under an exception to the hearsay rule as defined in the Federal Rules of Evidence, which we should adopt, or, (B) the testimony was not offered to assert the truth of the matter contained therein, but for the purpose of explaining the course of events that transpired after the statements were heard by the agent. The Commonwealth relies heavily upon *Armstrong v. Commonwealth,* Ky., 517 S.W.2d 233 (1975), and *Stallard v. Commonwealth,* Ky., 432 S.W.2d 401 (1968).

We believe the testimony of Agent Thomeczek had testimonial import and constituted a very significant link in the chain of circumstantial evidence against Maynard. Therefore, the reliance of the Commonwealth on *Armstrong v. Commonwealth, supra,* is in error. In *Armstrong,* it was held that the testimony of a police officer, relating his conversations and transactions with his informant, and the substance of the informer's end of a telephone conversation with an alleged seller of heroin was admissible, even though the informer did not testify at the trial of the heroin seller, because the words and the acts of the informer were part of a relevant course of events *observed by the witness,* the police officer. The conversation testified to by the officer who overheard the conversations was roughly: "Do you have any stuff? I want some . . .. About two spoons . . .. Same place . . .. O.K." It turned out that the person the informer was talking to was not the defendant, Armstrong.

The Court of Appeals stated on page 236 the following:

> White's extrajudicial utterances had no testimonial import. Had he made some such statement as, "I am calling up a man named Danny Robinson. He pushes dope for a fellow named Harry Armstrong," it would have had a definite testimonial effect and, even though spoken in the course of relevant acts and conduct, might very well have been inadmissible, . . .

Also, an important factor in *Armstrong* that we do not have in the case before us is that the police officer in *Armstrong* was actually present and overheard the telephone conversation.

The testimony permitted by the court in *Stallard v. Commonwealth, supra,* was by the police officer who repeated the information he had received from people regarding the theft, descriptions and identifications of a stolen motorcycle. The Court of Appeals concluded that none of the testimony was introduced to establish the fact that the appellant, Stallard, was operating the motorcycle without the owner's consent. The court held that testimony as to the manner in which the investigation of the crime was conducted was an exception to the hearsay rule. Generally, these utterances have no testimonial significance as to the defendant's guilt. Such is not our case here.

■■■■ Our belief that Agent Thomeczek's testimony of his December 5th conversation with Jones was offered for its effect on the guilt of Maynard is further strengthened when we search the record and find no other mention that Maynard had offered $2,000.00 to Jones and Conover to kill Wilson and that Jones rejected the proposal. The defendant Maynard was indicted for criminal solicitation under KRS 506.030 and, therefore, it would be necessary to show some rejection on the part of Jones to the offer made by Maynard and whether there was in fact an offer made.

Prior to the enactment of the Kentucky Penal Code in 1975, there was no statutory crime of criminal solicitation, nor can any cases be found where the crime existed at the common law. Previous to the Penal Code, if A hired B to rob C and B did rob C, then A was an accomplice to robbery. If A hired B to rob C and B unsuccessfully attempts to rob C, then A is guilty of attempted robbery, as an accomplice to B. If A agrees with B to rob C and A and B are arrested before an attempt is made to rob C, then A is chargeable as a co-conspirator with B. There was no crime if A asked B to rob C and B said no. This factual situation is what KRS 506.030 attempts to cover. The official commentary to the Kentucky Penal Code, Final Draft, page 81 states:

> Section 715 (KRS 506.030) is designed to deal with situations involving an *immediate rejection* by the solicitee of the initial

proposal. Under such circumstances, the criminal culpability of the solicitor is as great as it would be if his proposal should be accepted and the underlying offense completed or attempted by the solicitee and nearly as great as the culpability of a criminal conspirator. (Emphasis ours).

Therefore, even though rejection of the proposal by the solicitee is not specifically mentioned as an element in the statute covering criminal solicitation, nevertheless, if there is no rejection then there necessarily is no crime of criminal solicitation. Otherwise the crime is one of the actual offense of robbery, murder, etc., or one of criminal attempt or criminal conspiracy. If there was no rejection of Maynard's proposal by Jones, then there either was no crime of criminal solicitation or Maynard was indicted for the wrong offense. Were Maynard, Jones and Conover co-conspirators to murder Judge Wilson?

It would be most difficult for us to believe that the jury considered the special agent's testimony of the December 5th conversation with Jones as merely indicating the manner in which the investigation of the crime was conducted, *Stallard v. Commonwealth, supra,* or because the words of the informer were part of a relevant course of events observed by the agent, *Armstrong v. Commonwealth, supra.* The testimony was highly prejudicial to Maynard and it was more probable that the jury considered the testimony as substantial evidence of Maynard's guilt, *Stewart v. Cowan,* 528 F.2d 79 (6th Cir. 1976).

Since Thomeczek's testimony of the December 5th conversation was highly prejudicial to Maynard, the next question is whether the introduction of that testimony violated the Confrontation Clause of the 6th Amendment of the U.S. Constitution, made binding upon the Commonwealth of Kentucky by *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We must first determine what is required by the confrontation clause and naturally turn to cases decided by the U.S. Supreme Court.

In *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the court

stated that the confrontation clause was meant to constitutionalize a barrier against flagrant abuses, trial by anonymous accusers, and *absent witnesses.* It was implied that if the witness or accuser was available, he should be presented to the trier of fact.

Mr. Justice Rehnquist, speaking for the majority in *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), stated that unavailability of the witness is a "predicate" of the confrontation clause which requires the prosecution to produce available declarants whose statements directly bear on the charge against the defendant.

In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court held that the constitution imposes upon the prosecution the burden of showing the unavailability of a declarant before it is permitted to introduce a less reliable account of his declaration, *particularly if the evidence to be introduced is "crucial" or "devastating".*

The testimony of Agent Thomeczek of Jones' conversation with Maynard did violate Maynard's right to confront the witness against him. Although it violated the confrontation clause, there still would not be reversible error by the trial court's admission of this testimony into evidence if admissible under a recognized exception to the hearsay rule. Therefore, the unavailability of the declarant is not reason to exclude his testimony, even though a possible violation of the confrontation clause and obviously hearsay, if there exist other *indicia of reliability.* Obviously in our case, the unavailability of the declarant Jones was apparent. Even though the hearsay rule and the 6th Amendment right to confrontation are not the same, the two concepts do protect similar values and are aimed at excluding *unreliable* testimony. Recently the Federal Courts have adopted rules of evidence which categorize exceptions to the hearsay rule. The only possible exception applicable here is Rule 804.

The Commonwealth, although conceding the testimony of Agent Thomeczek was hearsay, urges this court to adopt the exception to the hearsay rule recognized by Rule 804 of the Federal Rules of Evidence. The appellant Maynard argues that the Federal Rules of Evidence have not been accepted by the Kentucky Courts or legislature and are not applicable. Maynard is partially wrong. The Kentucky Courts have not adopted the Federal Rules of Evidence, in toto, however, the courts have adopted some of the Federal Rules of Evidence. See *Heilman v. Snyder,* Ky., 520 S.W.2d 321 (1975).

We see no reason why this court should not adopt Federal Rule 804 which adds but another group of exceptions to an already eroded hearsay rule. Rule 804, having to do with the unavailable declarant, states, inter alia:

(a) Definition of unavailability. Unavailability as a witness includes situations in which the declarant:

(4) Is unable to be present or to testify at the hearing because of death  .  .  .

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

.  .  .

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

This rule recognized that there could occur exceptional circumstances where evidence which was found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed hearsay exceptions, and found to have a degree of probativeness and necessity, could be properly admissible.

However, the U.S. Senate Judiciary Committee, the proponent of Federal Rule of Evidence 804(b)(5), issued a warning to the judiciary to proceed with great caution. That warning is quoted in 4 *Weinstein, Evidence,* pp. 803–30 to 803–31 as follows:

It is intended that the residual "hearsay" exceptions will be used very rarely, and only in exceptional circumstances. The Committee does not intend to establish broad license for trial judges to admit "hearsay" statements that do not fall within one of the other exceptions contained in Rule 803 and 804(b). The residual exceptions are not meant to authorize major judicial revision of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the common law in establishing the now recognized exceptions to the hearsay rule. Senate Committee on the Judiciary, *Report on Federal Rules of Evidence,* 93rd Congress, 2nd Session, Report Number 93–1277, pp. 18 to 20 (Oct. 18, 1974).

■ It would be necessary, then, that in order for Agent Thomeczek's testimony of the December 5, 1975, conversation with Jones to be admissible that there be some equivalent circumstantial guarantees of trustworthiness or as stated in *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), if the testimonial import of the evidence to be introduced is "crucial" or "devastating" and there are sufficient "indicia of reliability" warranting the admission of the otherwise excludable evidence, it should be admitted. Were the circumstantial guarantees of trustworthiness and indicia of reliability sufficiently present in the instant case to permit the trial judge to allow the introduction into evidence of Agent Thomeczek's conversations with Jones? We feel constrained to say no.

■ The Commonwealth basically offers two factors as other "indicia of reliability": (a) The tape recording, and (b) the testimony of Agent Thomeczek that he found the informer, Jones, to be reliable.

Agent Thomeczek testified as follows: A. During the first conversation with Mr. Jones, and we probably had 20 or 25 meetings, or periods of time that we were together when we were working on a particular part of the investigation, he related many facts, some concerning Mr. Maynard, and some that had no bearing whatsoever on Mr. Maynard, but things that we would normally know, or we could find out through investigation, and things that related to other criminal acts that were being committed in Kentucky, and all of these facts *I know of no thing that Mr. Jones told me that turned out to be false.* The information he gave me on December the 8th resulted in the arrest of 3 individuals and recovery of some $500.00 in property that had been stolen out of a residence, because Mr. Jones told me, and because what Mr. Jones told me was credible, it was believable and it was true, and the descriptions that he told me. Things that could be verified were verified, and found to be true. The fact that he had . . . the things that he told me that I could verify I checked out, and *I never found him to ever give me any unreliable information.* (Emphasis ours.)

Considering these two factors in reverse order, the testimony of Thomeczek about the reliability of Jones would be sufficient if we were merely considering probable cause for the obtaining of a search warrant. We say this even in view of the fact that Thomeczek, on cross examination, testified Jones had numerous arrests and convictions and was a homosexual, who possibly was murdered as a result of some act of sexual perversion, thereby giving the jury suffi-

cient information about the character of Jones that they could readily disbelieve his story. But the indicia of reliability is insufficient for the testimony of Jones to convict Maynard of the crime of solicitation to commit murder. The tape recording, in and of itself, has very little probative value and does not, in our opinion, circumstantially guarantee the trustworthiness of Jones' testimony about being offered $2,000.00 to murder Judge Wilson and the very prejudicial statement that Jones and Earl Conover in effect planned the act and the manner in which the escape would take place. We do, however, believe the tapes were admissible into evidence based on the ruling in *OnLee v. U.S.*, 343 U.S. 747, 96 L.Ed. 1270, 72 S.Ct. 967 (1952) and *Commonwealth v. Brinkley*, Ky., 362 S.W.2d 494 (1962).

Since we are reversing on the basis of the error committed in allowing the testimony of Agent Thomeczek about his conversation with the informer, Jones, on December 5, 1975, we need not discuss at length the other alleged errors raised by Maynard; however, since we are reversing for a new trial, we do believe a comment is required on certain actions that took place at the first trial. We believe the testimony of Judge Wilson that he had heard that Jones had been solicited by Maynard to take the Judge's life was immaterial, irrelevant and inadmissible. The conduct of the Commonwealth was highly improper when the prosecutor asked Maynard if he had been convicted of a previous felony after the trial court ordered the Commonwealth Attorney not to ask the question. We assume this will not happen at the retrial. We believe the case should be sent back to Russell Circuit Court for a retrial since there was ample evidence in the record that there was an available witness to the conversation between Jones and Maynard and the Commonwealth should be given the opportunity to produce that witness, Earl Conover. Lacking such testimony, however, the trial court should dismiss the indictment against the appellant, Charlie Maynard.

The judgment is reversed and the appellant is granted a new trial in accordance with the guidelines set forth in this opinion.

All concur.