Shadrick K. EDMONDS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 94–SC–376–MR.

Supreme Court of Kentucky.

Sept. 21, 1995.

Sally Wasielewski, Fayette County Legal Aid, Lexington, for appellant.

Chris Gorman, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Edmonds of trafficking in a controlled substance, first degree, for which he was sentenced to five years and convicted of criminal syndicate for which he was sentenced to ten years. He entered a plea of guilty as a persistent felony offender in the first degree which enhanced his trafficking sentence to ten years and his criminal syndicate sentence to twenty years to be served consecutively. He was sentenced to thirty years in prison.

The questions presented are whether the informant's in-court identification was proper; whether the admission of a video tape of

the execution of the search warrant and arrest was proper; whether a directed verdict should have been granted as to the evidence of criminal syndicate; whether the conviction for trafficking in cocaine and criminal syndicate was double jeopardy; whether the Commonwealth proved every element of criminal syndicate; whether the jury was properly instructed and whether the criminal syndicate statute was overbroad and void for vagueness.

In 1993, Edmonds was among eleven individuals who were indicted on various charges including trafficking in controlled substances, criminal syndicate, welfare fraud, failure to file state income tax and persistent felony offender charges. Edmonds and his four codefendants, Smith, Brooks, Dishman and Michael Ross, were tried together. All were convicted of various charges, but Ross's case is pending before the Court of Appeals. The trial of the defendants was the result of a two year investigation of a group known as the "First Family," and its activities in the illegal drug trade.

The charges against Edmonds were based on four so-called "controlled buys" with a police informant who was equipped with an audio recorder and given cash to purchase cocaine. The fifth occasion was arranged by police as a "buy bust" where there was an arrest of the parties involved in the scene. The first purchase occurred on April 24, 1992 at Lynhurst Apartments in Fayette County. The second buy was on December 15, 1992 at 162 St. Margaret Drive in Fayette County. The third buy took place on February 4, 1993 at the St. Margaret Drive address. The fourth buy was on May 20, 1993, also at St. Margaret Drive. The final purchase of cocaine was called a "buy-bust" and occurred in Oakwood Park in Fayette County.

The "buy-bust" took place on August 20, 1993. An undercover detective met Smith in Lexington, but he sought to move the transaction to a Lexington apartment complex. When the informant refused, arrangements were made with a woman named "Karen" for the buy to take place at a small Lexington park. Afterwards, the informant, the undercover detective and Smith drove to the park where the police arrested Smith and Karen

Burdell Wilson. The police seized over seven ounces of cocaine and found $4,500 in the trunk of Wilson's car.

Acting on information from Wilson, who stated that she knew the source of the cocaine, the police obtained a search warrant for 116 Hanley Lane, Apartment 6, in Frankfort, Kentucky. According to Wilson, this unit was rented by Brooks when the search warrant was executed. Cocaine, crack cocaine and marihuana and other evidence of drug trafficking were seized and several people including Brooks, Dishman and Edmonds were arrested.

At trial, John G. Bentley, Jr. testified that he was in the "First Family" along with Smith, Brooks, Dishman, Ross and Wilson. Smith testified and admitted that he had purchased cocaine from the informant on August 20, 1993, but denied that he or the others were a part of an organized crime syndicate. Edmonds and codefendants, Dishman and Brooks, were arrested during a search of Brooks' apartment that same day. Karen Burdell Wilson testified that she was Brooks' sister and knew the organization referred to itself as the "First Family." She identified members of the organization as Edmonds, Sarita Brooks, Virgil Young, John Bentley, Michael A. Ross, Karen Dishman and Vandree Smith. She stated that she was also a member of the "First Family." Wilson detailed the operations of the crack cocaine manufacture that occurred in her apartment at 162 St. Margaret Drive in Lexington. She testified that she saw large amounts of cash and cocaine in the possession of all the individual members of the "First Family" and that she saw drug transactions take place at the St. Margaret Drive address. According to Wilson, Brooks was the head of the "First Family" and Karen Dishman was the second in command with Vandree Smith as third in rank.

Edmonds was found guilty of trafficking in cocaine and criminal syndicate. He then pled guilty as a persistent felony offender in the first degree and was sentenced to a total of thirty years in prison. This appeal followed.

## I Identification

Edmonds first argues that the in-court identification of him by an informant was impermissibly tainted and that the identification should have been suppressed and a directed verdict of acquittal granted on all charges. We disagree.

■ *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983) held that a circuit court is authorized to direct a verdict of acquittal only if the prosecution produces no more than a mere scintilla of guilt. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991). Here the prosecution relied on the unequivocal in-court identification of the defendant by the informant. There was also an audio tape of the February 4, 1994 drug buy. Edmonds was arrested with other "First Family" members in the Frankfort apartment. Karen Burdell Wilson testified that he was a member of the "First Family" and there was also testimony that appellant was among those members of the "First Family" who made trips to New York to purchase large quantities of cocaine. When considering this evidence in a light most favorable to the Commonwealth, the motion for directed verdict was correctly overruled. *Benham, supra.*

■ In-court identification of Edmonds was proper and did not provide a basis for a directed verdict of acquittal. The trial judge correctly determined that the out-of-court photographic identification of Edmonds was not obtained in an impermissibly suggestive manner. In order to be impermissibly suggestive, an out-of-court identification must give rise to the very substantial likelihood of irreparable misidentification. *Sanders v. Commonwealth,* Ky., 844 S.W.2d 391 (1993). A reviewing court must consider the totality of the circumstances involved. The relevant factors in such a determination are 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior descriptions of the criminal; 4) the level of certainty demonstrated by the witness when confronted with a photograph; and 5) the length of time between the crime and the confrontation. *Sanders, supra; Neil*

*v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Here the evidence indicates that the informant had sufficient opportunity to look at Edmonds during the drug buy. They drove together from St. Margaret Drive to another residence off Oxford Drive. The informant gave considerable time and attention to Edmonds at the time of the purchase. She identified him in a specific manner and had no difficulty pointing Edmonds out in court. The witness demonstrated a high level of certainty in all the identification procedures. The police officer handed the witness seven photographs and asked if she recognized anyone pictured. There was no prior conversation between them about the pictures. The trial judge went to considerable trouble to determine that the pretrial identification was not impermissibly suggestive and there was no support for suppressing either the in-court identification or the out-of-court identification.

## II Video Tape Evidence

Edmonds contends that the admission of the search warrant execution and arrest video tape was inflammatory and more prejudicial than probative. He claims that the video tape included dramatic footage of the persons arrested being handcuffed by police in riot-type gear, patted down and asked to identify themselves. He claims that this footage was not necessary to identify the arrested individuals.

■ There was no objection at trial to the video tape being shown to the jury and consequently this alleged error is not properly preserved for appellate review. RCr 9.22; *Turpin v. Commonwealth,* Ky., 780 S.W.2d 619 (1989). There is no reason to invoke RCr 10.26 regarding manifest injustice or palpable error because Edmonds can point to no manifest injustice resulting from this claim of error. The alleged error does not rise to the level of constitutional magnitude as urged by Edmonds in citing *Brown v. Commonwealth,* Ky., 551 S.W.2d 557 (1977). He was not deprived of a fair trial because the evidence was not inflammatory, provocative, unnecessary, irrelevant or unduly prejudicial. The probative value of the video tape

outweighed any prejudicial effect. *Cf. Wager v. Commonwealth*, Ky., 751 S.W.2d 28 (1988). The video tape provided relevant and probative evidence of the circumstances of the crimes charged. *Sanders, supra.* The tape showed the jury the drugs and drug paraphernalia as well as the large sums of cash found.

Edmonds specifically challenged his inclusion as a member of the "First Family" and its criminal activities. The video tape clearly demonstrates that he was in the Frankfort apartment at the time of the arrest. Thus it allows the jury to reach its own conclusion as to his identity and his involvement in the criminal enterprises. The other authorities cited by Edmonds are unpersuasive.

### III   Directed Verdict

Edmonds maintains that there was insufficient evidence to convict him on criminal syndicate and a directed verdict of acquittal should have been granted.

As we have noted earlier in considering a motion for directed verdict, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Benham, supra.* If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. There was sufficient evidence that cocaine sales were being conducted at the Brooks' residence; that Brooks was the head of the "First Family"; that Edmonds lived at St. Margaret Drive with Brooks; that Edmonds was present in the Hanley Lane apartment on the day of the search warrant and arrest; that Edmonds was one of the people who went to New York to purchase quantities of cocaine; that Edmonds frequently rented cars that were driven in pursuit of the criminal syndicate enterprise; and that Karen Burdell Wilson stated that Edmonds was the last ranked member of the "First Family." Wilson admitted that she did not know all the "First Family" members but that they were known by their roles in the illegal drug enterprise and not by any membership list. Under all the circumstances it was not reversible error for the trial judge to refuse to grant a directed

verdict of acquittal on the basis of insufficient evidence. *Cf. Sawhill, supra.*

The evidence clearly showed that Edmonds either established, maintained or facilitated drug trafficking activities in which the "First Family" engaged on a continuing basis. The members of the family numbered at least five as required by KRS 506.120(3). *See also* KRS 506.120(1)(e) and (3)(e).

Edmonds maintains that the evidence proved that he engaged in only one drug transaction and had social involvement with women who may have been members of the "First Family." However, the jury is not required to believe such an exculpatory explanation in view of other inculpatory evidence presented by the prosecution. *Armstrong v. Commonwealth*, Ky., 517 S.W.2d 233 (1975). Under all the circumstances, Edmonds was not entitled to a directed verdict of acquittal. The trial court did not commit error.

### IV   Double Jeopardy

The circuit judge correctly overruled a motion objecting to the jury being instructed on both trafficking in a controlled substance and criminal syndicate as a violation of double jeopardy principles. Edmonds claims that the cocaine trafficking charge was a lesser included offense of the criminal syndicate charge and that the trial judge permitted the Commonwealth to seek and obtain multiple convictions for the same criminal episode. He contends that the proper relief in this case is to vacate the so-called lesser included offense of cocaine trafficking.

Considering the facts of this case, Edmonds was not placed in double jeopardy as a result of the conviction for both cocaine trafficking and criminal syndicate. The count of cocaine trafficking was not a "lesser included offense" of the crime of criminal syndicate.

There is no double jeopardy violation because the statutory crimes of trafficking in a controlled substance and criminal syndicate each require proof of facts which the other does not. There was sufficient evidence to prove Edmonds guilty of criminal syndicate

independent of the evidence which was introduced to demonstrate that he engaged in cocaine trafficking on another occasion. Criminal syndicate and cocaine trafficking were not factually a single offense or part of a single criminal episode. They did not constitute a single act or single impulse as denounced in *Ingram v. Commonwealth*, Ky., 801 S.W.2d 321 (1990) or *Commonwealth v. Grubb*, Ky., 862 S.W.2d 883 (1993).

The Kentucky Constitution in Section 13 and the Federal Constitution in the Fifth Amendment protect against double jeopardy. The current state of the law is expressed in *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 (1991), which held that the Kentucky Constitution provides "protection against multiple punishment for crimes which are factually a single offense," whether in the context of successive prosecutions or the same trial. Prosecution for two crimes does not constitute double jeopardy if each statutory offense requires proof of a fact which the other does not, and if to establish an essential element of one crime, the prosecution does not prove conduct that constitutes the second offense. *Walden, supra; Ingram, supra.*

An overlap of proof does not necessarily establish a double jeopardy violation. *See United States v. Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). The correct test is whether the separately charged crimes are factually a single offense.

The trafficking on February 4, 1993 was established by testimony from the informant that Edmonds was the one who sold her the cocaine.

The evidence indicated that cocaine sales were conducted from April 24, 1992 through August 20, 1993 at the St. Margaret Drive residence in Lexington from where purchases of cocaine were made directly or by being sent to other locations where cocaine could be obtained. The proof at trial demonstrated a considerable amount of income and a variety of cash expenditures for furniture and vehicle rentals. The evidence established the efforts by Edmonds to organize and participate in the "First Family" so as to promote and engage in cocaine trafficking on a continuing basis in violation of KRS 506.120. The evidence of his specific act of cocaine trafficking on February 4, 1993 was not necessary to support the criminal syndicate charge under KRS 506.120.

The conviction of Edmonds for both cocaine trafficking and criminal syndicate did not result in the imposition of multiple punishments arising from a single episode as condemned in *Grubb, supra.* It is entirely permissible to use the trafficking violation as an element of proof of the criminal syndicate charge. It is no double jeopardy violation to use evidence of trafficking as a part of the criminal syndicate proof.

## V  Jury Instructions

Edmonds claims that the prosecution failed to prove every element of the crime of criminal syndicate. He contends that the wording of the jury instruction on the criminal syndicate charge was improper because the word "intent" was used to designate Edmonds rather than the group. We disagree.

The instruction on criminal syndicate was proper. The jury instruction links "intent" with Edmonds in Paragraph B. All the jury is required to believe is that five or more individuals collaborated and it is not necessary to show that each participant in the criminal scheme collaborated with or was aware of the collaboration of the other participants. *Cooper v. Commonwealth*, Ky., 786 S.W.2d 875 (1990). The prosecution is not required to prove any specific number of incidents or any element of time, but must show by proof what the jury could infer from the evidence as to intent to collaborate on a continuing basis. *Commonwealth v. Phillips*, Ky., 655 S.W.2d 6 (1983).

## VI  Statute Constitutionality

Finally, Edmonds argues that the criminal syndicate statute as applied to him was overbroad and void for vagueness. He maintains the language of KRS 506.120 is unclear and unconstitutionally vague.

This argument is largely a repetition of arguments previously made by Edmonds. It may be that he was not as actively involved in all the criminal activities of the "First

Family" as were other members of the group but that does not lessen his culpability under the criminal syndicate statute or render that statute unconstitutionally vague. The jury was not required to believe his explanations when countered by other sufficient evidence presented by the prosecution.

The judgments of conviction for first-degree trafficking in a controlled substance, criminal syndicate and for being a first-degree persistent felony offender are affirmed.

STEPHENS, C.J., and FUQUA, LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

STUMBO, J., concurs in result only.