The People *v.* Northrup.

[ORANGE GENERAL TERM, September 9, 1867. *Lott, J. F. Barnard* and *Gilbert*, Justices.]

---

## THE PEOPLE *vs.* CALVIN M. NORTHRUP.

Under the section of the Code of Procedure, directing that the places appointed within the several counties for holding the general and special terms, the circuit courts and courts of oyer and terminer, shall be those "designated by statute for holding county or circuit courts," a court of oyer and terminer in a county where there are court houses in different places, designated by statute as places in which county and circuit courts may be held, after having met at one of such places, may adjourn to meet at another.

A power to adjourn, imports a power to put off the holding of the court to another time or place. The only restriction on the power is that the place be one designated by statute.

Taking into view the whole of section 24 of the Code, it is apparent that the legislature intended to leave the law, regulating the places of holding courts, as it stood at the time of the passage of the Code.

On the trial of an indictment against a husband for administering poison to his wife, with intent to kill her, the wife may be admitted as a witness for the prosecution. And being a competent witness, there is no rule by which any part of her testimony should be excluded.

CERTIORARI to the Westchester oyer and terminer, to remove an indictment and bill of exceptions. The defendant was indicted for administering poison to Eliza W. Northrup, (his wife,) with intent to kill her. Bedford and White Plains are the two towns in Westchester county where there are court houses, and where the courts are held. For late years the terms of the circuits and oyer and terminer have been appointed by the judges of the Supreme Court, to be held at White Plains, and have been held there ; but the county courts have always been held at Bedford, the same as at White Plains. In November, 1866, the oyer and terminer convened at White Plains, pursuant to a regular appointment, and sat for one week, and was then adjourned to the 14th day of January, 1867, at the court house in Bedford, by a regular entry made in the minutes of the court. On the assembling of the court at Bedford, on the 14th day of January, 1867, and before calling the jury for the trial of the defendant on said indictment, it was shown to the court that at a meeting of the justices of the Supreme Court, of the second judicial district, had therefor on or about the 25th day of November, 1865, the said justices appointed the times and places for holding the Supreme Court, circuit, general and special terms, and the courts of oyer and terminer in said judicial district, and appointed the times and places of holding the courts of oyer and terminer for Westchester county, to be held at White Plains, in March, June, September and November, 1866 ; and in the same months in

the year 1867. That no court of oyer and terminer or circuit court was appointed by said justices for either of the years 1866 or 1867, to be held at Bedford. That a term of said court of oyer and terminer, so appointed, was held at White Plains, in said county, commencing on the fourth Monday of November, 1866, Mr. Justice SCRUGHAM, presiding. The said November term of said court of oyer and terminer was adjourned by said court (defendant being absent, but Robert Cochran, Esq. his counsel, being present,) from White Plains, to meet at the town of Bedford, in said county, on the 14th day of January, 1867, at 1 o'clock in the afternoon. On the meeting of said court of oyer and terminer, at Bedford, on the 14th day of January, 1867, for the trial of said indictment herein, and said trial being moved by the district attorney, only ten of the jurors summoned to attend the court at White Plains appeared ; and a jury was then summoned and drawn from the ballots of jurors in the town of Bedford, nothwithstanding the objection of the defendant's counsel. The defendant objected to proceeding with the trial, because and for the reason that said court of oyer and terminer had no power or authority to adjourn from White Plains to Bedford as aforesaid, or to proceed with the trial, and that said adjournment was illegal and void, and that there was no law, appointment or authority for holding said court of oyer and terminer at the court house in Bedford. Which objection was overruled by the court, and the defendant excepted.

After an unsuccessful motion to quash the indictment, the defendant was put upon his trial and convicted, and made a bill of exceptions to review the proceedings.

*John S. Bates* (district attorney) and *Chauncey Shaffer*, for the people. I. The first law under the present system of the courts was passed by the legislature of 1848, and required the governor, on or before the 1st day of May, 1848, to designate

the times and places of holding the courts, and the judges by whom they should be held. These appointments took effect July 1, 1848, and continued until December, 1849. The judges of the Supreme Court of each district were then required, at least one month before the expiration of that time, to appoint the times and places of holding the courts for two years, commencing January 1, 1850, and so on for every two succeeding years in their respective districts. (*Code of Procedure*, § 22 )

II. The places appointed within the several counties for holding the general and special terms, the circuit courts, and courts of oyer and terminer, shall be those designated by statute for holding county or circuit courts. (*Code*, § 24.) The court house in the town of Bedford is such a place. General and special terms of the Supreme or county courts, and circuit courts, and courts of oyer and terminer, may be adjourned, to be held on any future day, by an entry to be made in the minutes of the court ; and juries may be drawn and summoned for an adjourned circuit or county court, or an adjourned court of oyer and terminer ; and causes may be noticed for trial at an adjourned circuit or county court, in the same manner as if said courts were held by original appointment. (*Id.*)

III. The oyer and terminer at White Plains, in November, 1866, could "be adjourned to be held on any future day" (*i. e.* the same court to be held on any future day.) There is here no limitation of place ; another court could be adjourned to any place other than White Plains, in Westchester county, so long as it was one of "*those designated by statute for holding county or circuit courts ;*" and as Bedford was one of the places designated by statute for holding both county and circuit courts, the oyer and terminer was properly and regularly adjourned to that place. (*Laws of 1813, vol.* 2, *p.* 142.)

IV. The provisions of the Revised Statutes (3 *R. S. 5th ed.* 289, § 22) requiring the district attorney to issue a pre-

cept to the sheriff, commanding him to summons the grand and petit jurors, is no longer operative, but has been repealed, at least so far as the regular stated terms of the oyer and terminer are concerned.

V. The whole system of the appointments of the terms has been changed, and there is no indication that, under the new arrangement, the district attorney's precept is now necessary. (*Code of Procedure,* §§ 17 *to* 25.) 1. The objection in this case is made on the ground that "no precept was issued by said district attorney to the sheriff to summons said grand jury who found said indictment." The case of *The People* v. *McKay* (18 *John.* 212) is not, therefore, an authority in this case, for that case is put solely upon the ground that the petit jury, by which the cause was tried, was summoned without a precept or venire. 2. The case of *Mc-Guire* v. *The People* (2 *Park. Cr. R.* 148) must be considered as overruled. (*The People* v. *Robinson, Id.* 292. *The People* v. *Cummings,* 3 *id.* 343. *The People* v. *McCann, Id.* 272.) 3. Besides, the precept, if now necessary, is a mere form, and our statute provides that "no indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings thereon be affected by reason of any other defect or imperfection in matters of form, which shall not tend to the prejudice of the defendant." (3 *R. S. 5th ed.* 1019, § 59.)

VI. It is next objected that no juror could be drawn from the box containing the names of jurors residing in the town of Bedford, but that such jurors must be drawn from the box containing the names of jurors residing in White Plains, where the court had commenced its session, and from which place it had been adjourned to Bedford. 1. The statute under which these extra boxes are kept and extra jurors drawn, provides that " The clerk of every county, in addition to the box by law now provided and kept for the purpose of containing the names of jurors drawn to serve at any court, shall provide another box in which he shall deposit the names of all persons who have been selected and returned as suit-

able persons to serve as jurors, and who reside in city or town where *courts* are appointed by law to be held." (*Laws*, 1851, *p.* 528, *chap.* 210, § 1.) 2. The town of Bedford, being a " town where courts are appointed by law to be held," came within the operation of this statute, and the clerk accordingly had a box in which he " deposited the names of all persons who had been selected and returned as suitable persons to serve as jurors, and who resided in that town." 3. " Whenever a sufficient number of jurors, duly sworn and summoned, do not appear or cannot be obtained to form a jury, the court may order the sheriff to draw, in the presence of the court, from the box so kept by the clerk of the county, and containing the names of persons returned to serve on petit juries for the city or *town where such court is held,* the names of so many persons as shall be sufficient, and as the court may direct." (*Id.* § 2.) 4. When the defendant was put upon his trial the court was held at Bedford. A sufficient number of jurors, duly drawn and summoned, did not appear. Only ten appeared, not enough to form a jury ; the contingency then arose which justified and compelled. the court to order the sheriff to draw more jurors. From what box was he to draw ? Not from the box kept for the town of White Plains, for the court was not held there, but from the box " kept by the clerk of the county, and containing the names of persons returned to serve on petit juries for the city or town where such court was held," which was then the town of Bedford. 5. If this law had been framed to meet this case and enable the court to do just what it did, it would not have been any different, and need not have been any more distinct.

VII. The defendant objected to being tried by the jury summoned to attend the court at White Plains, because no precept had been issued to the sheriff by the district attorney, commanding the sheriff to summon them, and for the further reason that the jurors had been summoned to attend the present term of the court at White plains, on the fourth

Monday of November, 1866.  1. The first part of this objection is answered under point 5.  2. The answer to the second part is that the jurors were the same jurors that attended at White Plains, and attended at Bedford because they had not been excused ; they were the jurors that had been duly drawn and summoned for the term.

VIII. The points raised by the bill of exceptions are frivolous.

*L. S. Chatfield,* for the defendant.  I. The court of oyer and terminer, at which the defendant was convicted, was illegally held at Bedford.  The regular term of that court, held at White Plains, in November, 1866, could not be sent, by force of an adjournment, to any different place. By the constitution of 1846, the legislature were directed to provide for the times and *places* of holding these courts ; and they accordingly, in 1848, made such provision, expressly declaring all other statutes providing for the designation of such times and places *repealed.* The power to make the appointment of the times and places for holding said courts was committed by the legislature to the judges of the several districts, after 1850, and they were directed to make such an appointment every two years, and to file it in the office of the secretary of state, whose duty it was made to publish the same.  In making this appointment, the judges are restricted in their selection of the places for holding these courts to those then designated by statute for holding county or circuit courts.  After they had made their selections, appointed the place, and filed their appointment, *such place,* by virtue of the statute of 1848 and the said appointment, became the *only* place in the county properly designated by any existing legislation, and the *only* *place* where these courts could legally be held.  No one judge, (if even all of them,) could alter the place of holding the courts during the two years' operation of such appointment, except by legislative enactment.  The power to ad-

journ to a future *day* does not by implication confer the power to change the *place* of holding the court. In this case, Justice SCRUGHAM was authorized by statute to adjourn his oyer and terminer from November, 1866, to January, 1867, but not to remove it from White Plains. To what other place could he remove it? There was no other place in the county designated, or where a court could be legally held. The statute and the judges had made White Plains the only place in Westchester county where courts could be legally held, and if the court of oyer and terminer could be properly removed out of that town, it could have been so removed as well to Sing Sing as to Bedford. (*Const. of* 1846, *art.* 6, § 9. *Laws of* 1847, *chap.* 280, § 38. *Code,* §§ 17, 21, 22, 23, 24 *and* 25. *Laws of* 1866, *chap.* 174, *p.* 347. *Lafarge* v. *Van Wagenen,* 14 *How. Pr.* 58. *Webster's Dict. Laws of* 1861, *chap.* 210, *p.* 528. *The People* v. *Appo,* 18 *How. Pr.* 350.)

II. The act of 1861, (*chap.* 210,) contemplated but one place in each county whose jurors should be called upon to supply deficiencies in the panel, and that is "*the* city or town where courts are appointed by law to be held." That town in this case was White Plains, and the right to call upon its jurors was exercised in November. There was no power in the court, after removing the term to Bedford, to supply jurors from the latter town in the manner provided by this act. If this power could be exercised at Bedford at all, it could only be after twenty-four jurors duly drawn and summoned had appeared. (2 *R. S. part* 4, *chap.* 2, *title* 5, § 3, *p.* 758, *Edmonds' ed.*)

III. Neither the grand jurors who found the indictment, nor the petit jurors who attended at the adjourned term, had been duly summoned, as it was the prisoner's right that they should be. No precept was issued by the district attorney to the sheriff to summon the said jurors, as provided by law. (3 *R. S. p.* 298, *5th ed.* § 22. *McGuire* v. *The People,* 2 *Parker's Cr. Rep.* 148.)

IV. Much of the testimony of the prosecutrix, the wife of the defendant, received by the court, under the defendant's objection, infringes upon the rule of the common law forbidding husband and wife to testify for or against each other, and went far beyond any exception to that rule allowed from motives of humanity or *ex necessitate.* (1 *Black. Com.* 443. *Rex* v. *Oliviyer,* 2 *T. R.* 263. *Davis* v. *Dinwoody,* 4 *id.* 678. *Rex* v. *Sergeant, R. & M.* 352. *Rex* v. *Jagger,* quoted by *Russell. Rex* v. *Pearce,* 9 *C. & P.* 667. *People* v. *Mercein,* 8 *Paige,* 37. 2 *Russell on Crimes,* 980–983.)

*By the Court,* GILBERT, J. I. The question of the legality of the adjournment to Bedford, is one of *power* only. There is not the slightest reason for the suggestion, that the prisoner has suffered any injury, of which the court can take cognizance, in consequence of such adjournment. This power of adjournment is original and exclusive in the same sense as the power of appointment. (*Code,* §§ 22, 24.) The limitation, as to the place of holding the courts, applies to both. They are to be held in the places " designated by statute for holding circuit or county courts." It is not disputed that the court house in Bedford is one of the places so designated. As, therefore, courts might have been appointed to be held at Bedford, it is difficult to perceive why they may not be adjourned to be held there. A power to adjourn imports a power to put off the holding of the court to another time or place. (*Vin. Ab. Adjt. A. Com. Dig. Adjt, and Assize B.* 25. *Jac. Law Dic. Adjt. Goodel* v. *Baker,* 8 *Cowen,* 286. *People* v. *Martin,* 1 *Seld.* 22.) The only restriction on the power is, that the place be one designated by statute. The language used in section 24 of the Code, viz : " *May be adjourned to be held on any future day,*" is not restrictive of the legal import of the word " *adjourned,*" but was evidently intended as a requirement to fix the time ; for the statute then in force and referred to in this section had fixed the place. The adjournment is to be made " by an entry to be made in the

minutes of the court, and it should specify time and place."
Taking into view the whole of section 24, it is quite appa-
rent that the legislature intended to leave the law, regulating
the places of holding courts, as it stood at the time of the
passage of the Code. I am of opinion, therefore, that no
error was committed in this respect.

II. The wife was properly admitted as a witness. The
exception of cases like this from the general rule of the com-
mon law, excluding the testimony of husband and wife for or
against each other, is too well grounded to be questioned at
the present day, when the tendency of legislation is strongly
towards an abrogation totally of the rule itself. (*Ros. Crim.
Ev. 6th ed.* 118. *Taylor on Ev.* § 1000. *People* v. *Carpen-
ter, 5 Barb.* 580.) Being a competent witness, I am not
aware of any rule whereby any part of her testimony ought
to have been excluded. It was intimated by Holroyd, J. in
*Rex* v. *Whitehouse, (cited in* 2 *Russ. Crimes,* 3*d ed.* 984,)
that the husband and wife could only be admitted to prove
facts which could not be proved by any other witness. But I
cannot find any case where such a restriction has been applied.
Mr. Taylor, in his treatise cited before, says of it, "it may
be doubted whether this be not restricting the rule within too
narrow bounds." It seems to me that such a restriction
would be impracticable, and would serve no useful purpose.

III. I have considered the other objections raised by the
prisoner's counsel, and am of opinion that each of them has
been satisfactorily answered by the district attorney.

The proceedings should be remitted to the court of oyer
and terminer for the county of Westchester, with directions
to proceed and render judgment. (2 *R. S.* 741, § 25.)

[ORANGE GENERAL TERM, September 9, 1867. *Lott, J. F. Barnard,* and
*Gilbert,* Justices.]