Commonwealth v. Sapp.

Case 92—INDICTMENT—October 25.

# Commonwealth v. Sapp.

APPEAL FROM MARION CIRCUIT COURT.

1. Husband and Wife—Right to Testify for and Against Each Other.— A divorced husband or wife may testify to the acts of the other during the existence of the marriage, provided the knowledge was not obtained by reason of the marriage relation. Therefore, it was competent upon the trial of the husband, upon the charge of attempting to poison the wife, for the wife, who was divorced at the time of the trial, to testify that she had seen the husband sprinkle a substance upon a piece of watermelon intended for her, which was afterwards shown to contain arsenic.

2. Same.—The word " communication," as used in our statute, which provides that neither husband nor wife shall testify, even after the cessation of their marriage, " concerning any communication made by one to the other during marriage" should be given a liberal construction. It should not be confined to a mere statement by the one to the other, but should be construed to embrace all knowledge upon the part of either obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known.

3. Same.—The wife is a competent witness against the husband where he is charged with committing or attempting to commit a crime against her person. And upon this ground also the divorced wife should have been allowed to testify in this case.

4. Evidence.—As the wife had not testified as a witness, testimony tending to show that she was unchaste was incompetent.

5. Overruled Case.—The case of Turnbull v. Commonwealth, 79 Ky., 495, is overruled in so far as it conflicts with this opinion.

P. W. HARDIN, Attorney-General, for appellant.

No brief in record.

FINLEY SHUCK on same side.

1. The divorced wife of the defendant was a competent witness. What was proposed to be shown by her was not a *communication* that had come to her by reason of the marital relation. (Civil Code, sec. 606; Ellswick v. Commonwealth, 13 Bush, 155; 1 Greenleaf on Evidence' sec. 337; 1 Phillips on Evidence, p. 75, 3d Am. ed.; Dickerman v. Graves, 6 Cush., 308.)

·2. As the defendant's wife had not testified, it was not competent to prove that she was unchaste.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

Upon the trial of William Sapp upon the charge of attempting to poison his wife, the State offered her as a witness against him, avowing by its attorney that it would prove by her she had seen the accused sprinkle a substance upon a piece of watermelon intended for her, and that the portion of it produced at the examining trial, and then shown to contain arsenic, was a part of the piece prepared for her, and was, when so produced, in the same condition as when she got it from him. It is claimed the attempt was made in August, 1888. Afterward, and before his trial, they were absolutely divorced. The court refused to permit her to testify, holding that she could not be a witness for any purpose; and whether this is so is the main question now presented.

It is a general rule of the common law, based both upon public policy and because of identity of interest, that neither a husband or wife can testify for or against the other; and some authorities hold that where this relation has once existed, the one is inadmissible for or against the other, even after the relation has ceased, as to any and all matters that occurred during its existence. They follow Lord Alvanley, who said, in the early case of Monroe v. Twisleton, Peake's Ad. Cas., 219, that the divorced wife is a competent witness to prove any fact arising after the divorce, but not to prove any thing which happened during coverture. Thus Mr. Wharton says: "If a woman be divorced *a vinculo matrimonii*, she can not prove a contract, or any thing else which happened during the coverture. Any fact arising after the divorce she may prove." (1 Wharton's Crim. Law, sec. 774.)

It is, perhaps, questionable whether some of the writers to this effect do not mean that the divorced wife can not testify as to any matter occurring during coverture, if her knowledge as to it arose by reason of the marital relation.    It was held in the State v. Phelps, 2 Tyler's Reports, 374, that a woman, although divorced absolutely, is not a competent witness upon an indictment against her former husband for a crime committed during the coverture, but the court so announced without any argument in the opinion of the question.    Cases may, however, be found where courts of high authority have held that a widow may testify against the administrator of her husband as to any facts which she did not learn from the latter, or which did not come to her knowledge by reason of the marital relation, although relating to the transactions of her husband.    (1 Greenleaf on Evidence, sec. 338; Babcock v. Booth, 2 Hill, 181.)

In the case last cited the court said: "The policy of the law only excludes her when her answer will be a violation of the confidence which existed between the husband and wife while the marriage relation continued;" and in Ratcliffe v. Wales, 1 Hill, 63, which was an action for *crim. con.* with the plaintiff's wife, it was held that while a divorced wife is generally incompetent to testify *against* the husband as to facts occurring during the marriage, yet she was competent to prove the charge *for* him, although the act occurred during the existence of the marriage.    We fail to see any reason for a distinction, whether she be called as a witness for or against him.

It was held by this court in Storms, &c., v. Storms, &c., 3 Bush, 77, that the testimony of a husband, after his wife has been divorced from him, is competent against her, if it divulges no communication between them during coverture. In English's Adm'r v. Cropper, 8 Bush, 292, the testimony of the widow of the intestate was offered by his administrator to prove facts which came to her knowledge during the coverture, but not by reason of her confidential relation as wife.

It was urged that our then existing law (1871) provided that husband and wife should not testify for or against each other, and that, construing it by the reasons of public policy, which, before its adoption, disqualified them from so testifying, it should be held to exclude them after the dissolution of the marriage by divorce or the death of one of them; but this court said : "Neither the literal import of the language of the Code cited nor any principle of policy or propriety will exclude a surviving wife or husband from testifying to facts known by the witness from other means of information than such as result from the marriage relation, where, as in this case, the witness is not otherwise incompetent, although the testimony may relate to transactions of the deceased husband or wife."

Our statute, adopted in 1872, and which, in substance, so far as it bears upon the question we are now considering, is again found in section 606 of the Civil Code, appears to be declaratory of these decisions of this court. It says: "Neither husband nor wife shall be competent for or against each other, *or*

*concerning any communication made by one to the other during marriage, whether called while that relation subsisted or afterwards*, provided, however,. that in actions where the wife, were she a *feme sole*,. would be plaintiff or defendant, the wife may testify or her husband may testify, but both shall not be permitted to testify." (General Statutes, edition 1883, page 414.)

This provision was considered in the case of Elswich v. The Commonwealth, 13 Bush, 155, where the husband was indicted for a felony, but not one against the wife, who had been divorced before the trial; and it was decided. that inasmuch as she had been divorced she was a competent witness for him to prove facts: which came to her knowledge while the marriage relation existed, but not confidentially or by means of her situation as wife. Unquestionably, information obtained by the husband or wife during the marital relation by reason of its existence should not be disclosed, even after the relation has been dissolved.. Whether this rule may be relaxed so as to permit the wife to testify against the husband *by his consent* has been, to some extent, a mooted point, but in this country it has generally been denied. Its. importance to the interests of society, protecting, as it does, the peace and harmony so vital to the most intimate of all relations, can not be overestimated. Its disregard would throw open to the public gaze all' that privacy of married life which tends to cement the relation and destroy, in great degree, if not altogether, that mutual confidence and dependence the one upon the other, so necessary to its existence.

Discord and misery would reign where peace and concord are so necessary. In the language of an eminent legal writer: "The great object of the rule is to secure domestic happiness by placing the protecting seal of the law upon all confidential communications between husband and wife; and whatever has come to the knowledge of either by means of the hallowed confidence which that relation inspires. can not be afterwards divulged in testimony, even though the other party be no longer living." (1 Greenleaf on Evidence, section 337.)

If the proposed testimony violates marital confidence in the slightest degree, or tends, however slightly, to impair the rule for its protection, the highest considerations forbid its introduction. The word "communication," therefore, as used in our statute, should be given a liberal construction. It should not be confined to a mere statement by the husband to the wife or *vice versa*, but should be construed to embrace all knowledge upon the part of the one or the other obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known to the party. The reason of this rule does not apply, however, to facts known to a surviving or divorced husband or wife, independent of the existence of the former marriage, although the knowledge was derived during its existence, and relates to the transactions of the one or the other; therefore, the rule should not be applied in such a case. What the State proposed to prove by the divorced wife in this case was not any communication or knowledge which can fairly be considered as having come to her

by reason of her being then the wife of the accused. If she had not then been his wife, ordinary observation would have enabled her to know all that it was proposed to prove by her. But we think it was competent upon another ground. It was evidence relating to an alleged attempt at felony upon the wife. The rule that husband and wife can not testify for or against each other is subject necessarily to some exceptions, one of which is, where the husband commits or attempts to commit a crime against the person of the wife. (Stein v. Bowman, &c., 13 Peters, 221.) It was never doubted but what she could exhibit articles of the peace against him. Roscoe says: "It is quite clear that a wife is a competent witness against her husband in respect of any charge which affects her liberty or person." (Roscoe's Criminal Evidence, page 150.)

In an English case, where the husband attempted to poison the wife with a cake into which arsenic had been introduced, and the wife was admitted to prove that her husband gave her the cake, it was held by the twelve judges that the evidence was rightly admitted. (Rex v. Jagger, Russ. Crimes, 632.)

In 1 Wharton's Criminal Law, section 769, it is said: "Where, however, violence has been committed on the person of the wife by the husband, she is competent to prove such violence;" and in the case of the State v. Hussey, 1 Bush, 123, the judge, in delivering the opinion, said: "The rule, as we gather it from authority and reason, is, that a wife may be a witness against her husband for felonies perpetrated or attempted to be perpetrated on her, and we would say

for an assault and battery which inflicted or threatened a lasting injury or great bodily harm."

In the case of the People v. Northrup, 50 Barb., 147, the husband was on trial for administering poison to the wife, and she was admitted as a competent witness.

The policy upon which the rule that the husband and wife can not testify for or against each other is based is so far overcome as to create the exception by that superior policy which dictates the punishment of crime, and which, without the exception to the rule, would very likely go unpunished. It is of necessity. If it be said that our statute forbids the introduction of the husband or wife as a witness against the other, we reply, and so did the common law; and yet the exception named existed, and so it should, in our opinion, under our statute. The necessity of the case requires such a construction, and, as already said, the statute forbidding husband or wife to testify against each other is but declaratory of the common law. As the divorced wife would have been a competent witness if she had still been the wife of the accused at the time of the trial as to the alleged attempted felony upon her, it follows *a fortiori*, that being divorced did not disqualify her. The accused was allowed to introduce testimony tending to show that the wife was unchaste. She had not testified as a witness, and it is difficult to see upon what ground this was permitted. It is not supposable that a court acted upon the idea that unfaithfulness upon her part to her marital vows authorized her husband to poison her. The evidence was incompetent.

The case of Turnbull against the Commonwealth, 79 Ky., 495, is overruled in so far as it conflicts with this opinion.

This opinion is ordered to be certified to the lower court as the law of the case.