Frank ESTES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

and

COMMONWEALTH of Kentucky, Cross-Appellant,

v.

Frank ESTES, Cross-Appellee.

Nos. 86–SC–756–DG, 86–SC–763–DG.

Supreme Court of Kentucky.

Dec. 17, 1987.

As Corrected Dec. 17, 1987 and Jan. 4, 1988.

Rehearing Denied March 3, 1988.

James A. Maples, Monty Hall, Elizabethtown, for appellant.

David L. Armstrong, Atty. Gen., David A. Smith, Asst. Atty. Gen., Frankfort, for appellee.

LEIBSON, Justice.

In this case the principal issue is the correct application of KRS 421.210(1), which provides in pertinent part that a husband and wife may not testify "as to confidential communications ... during marriage," and provides "further, that neither [husband nor wife] may be compelled to testify for or against the other."

Frank Estes was convicted of first-degree manslaughter in the shooting death of John O'Nan, and sentenced to ten years' imprisonment. On appeal to the Court of Appeals he presented ten claims of error, nine of which were rejected. However, the Court of Appeals reversed and remanded for a new trial because the trial court permitted a written statement made by Cindy Estes, the appellant's wife, to be introduced into evidence, in its entirety, through the testimony of the police detective who investigated the occurrence for the Radcliff Police Department.

The Court of Appeals held that Cindy Estes' statement was partially admissible under a so-called "residual hearsay rule." The Court of Appeals' Opinion then limited admissibility only to certain portions of the statement, ordering that before retrial the trial court must "delete from the statement ... all that Mrs. Estes heard her husband say in confidence or saw him do in their home."

Thus the effect of the Court of Appeals' Opinion is to apply that portion of KRS 421.210(1) specifying that confidential communications during marriage are incompetent evidence, but to ignore that portion of KRS 421.210(1) that provides that neither spouse may be compelled to be a witness against the other. Although Cindy Estes refused to testify, the Court of Appeals has permitted her evidence as a witness to be introduced through her unsworn statement to an investigating police officer.

■ The Court of Appeals recognized that the statement was "primarily hearsay." It then held that nevertheless it "properly fall[s] within the residual hearsay rule ... Federal Rule of Evidence 840(b)(5) ... adopted ... in *Maynard v. Commonwealth*, Ky.App., 558 S.W.2d 628 (1977)." The *Maynard* case does not adopt the residual hearsay rule, except by negative implication, because it held that the rule did *not* apply in that case. However, to clarify the present confusion regarding the status of the Federal residual hearsay exception, we expressly declare that we have *never* adopted such a rule in Kentucky. We have yet to be presented with a case which would justify its consideration. Certainly it would not be applicable here where the evidence, if properly excluded, is excluded by reason of a statute mandating that confidential communications during marriage are incompetent evidence, and further specifying by statutory privilege that one spouse may not be compelled to testify against the other. KRS 421.210(1), *supra*. The residual hearsay exception would not apply in any event to evidence prohibited by statute.

The contents of Cindy Estes' statement revealed that she had been having an affair with the victim, John O'Nan. On the night in question, at the appellant's insistence, she telephoned O'Nan in the appellant's presence, and arranged to meet him. Appellant then got a gun, cut the telephone cord to prevent Cindy from calling O'Nan back to warn him, and departed in his truck to keep the appointment, with Cindy following by foot. She arrived at the scene of the shooting in time to hear a shot, but she did not actually witness the shooting.

Much of the above which is incriminating would be admissible under the Court of Appeals' rulings, as would certain other portions which are also incriminatory. KRS 421.210 is a statutory codification of ancient common law principles. It was originally enacted in 1872, and it comes down to us substantially as reenacted in 1898, with minor modifications.

One portion of this rule, the marital privilege, stems from an ancient common law

disqualification. Once upon a time the common law disqualified the testimony of interested parties; it "excluded the testimony of the parties to the law suit and of all persons having a direct pecuniary or proprietary interest in the outcome." *McCormick on Evidence*, 2d ed. 1972, § 65., p. 142.

> "In effect, this rule imposed a disability upon the party to testify in his own behalf and conferred upon him a privilege not to be used as a witness against himself by the adversary." *Id.*

The "early common law disqualification of a husband or wife of the party" was "[c]losely allied to the disqualification of parties," and "prevented the party's husband or wife from testifying either for or against the party in any case, civil or criminal." *McCormick, supra*, § 66, p. 144. Technically, we should classify the disability "to testify *for* the party-spouse as a disqualification, based upon the supposed infirmity of interest, and the rule enabling the party-spouse to prevent the husband or wife from testifying *against* the party as a privilege." *Id.*

The exclusion for marital communications (confidential communications during marriage) was an "offshoot of an ancient tree." *McCormick, supra*, § 78, p. 161. In England, and ultimately in our country, the ancient testimonial disqualification against a party, or the party spouse, was eroded or removed in varying degrees by statute. However, as this erosion took place, it was replaced or qualified in part by new rules which, "while making spouses competent to testify have included provisions disabling them from testifying to communications between them." *Id.*, p. 162.

Thus, though the rules regarding husband-wife testimony derived from ancient common law, they exist in present form solely as defined by statute. Viewed against this historical background the question is how does our Kentucky statute presently define them.

KRS 421.210(1) provides two separate rules:

1) A Testimonial Disqualification—A husband and wife are disqualified from giving testimony regarding "confidential communications between them during marriage," as in the former common law disqualification.

2) A Testimonial Privilege—"Further, neither may be compelled to testify for or against the other," similar to the privilege against self-incrimination.

Thus, the statute provides two distinct rules, "two separate limitations on husband-wife testimony." Lawson, *The Kentucky Evidence Law Handbook*, 2d ed., § 5.05(a), p. 121. Some cases get into difficulty because they fail to distinguish between the two prongs of this statute. One prohibits disclosure of "confidential communications," and the other provides a husband or wife with the privilege to refuse to testify for or against his spouse.

The Court of Appeals' Opinion fails to recognize this dichotomy, exploiting the confused notion that only confidential communications are covered by the statute. As stated in *Lawson, supra,* Commentary IV, p. 129, "at least some doubt about the scope of the privilege will exist until the conflicting decisions are reconciled and the point in question finally resolved."

Turning to the first prong of this statute, "confidential communications between [husband and wife] during marriage," the old rule, expressed in *Commonwealth v. Sapp,* 90 Ky. 580, 585, 14 S.W. 834, 835 (1890), was that "[t]he word, 'communication' ... should be given a liberal construction.... to embrace all knowledge upon the part of the one or the other [spouse] obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known to the party."

While arguably this principle has been limited in more recent decisions to the effect that the rule protects principally against disclosure of verbal discourse (*see,* for example, *Delk v. Commonwealth,* Ky., 285 S.W.2d 169 (1955)), certainly the language of the statute is not limited solely to verbal discourse. *Lawson, supra,* p. 124, citing cases, states that the disqualification

applies in those circumstances where "knowledge of spousal conduct is acquired because of confidence expected from the marital relationship."

The line that would need to be drawn in the present case, if the wife were offering to testify, is illustrated by *Hall v. Commonwealth,* 309 Ky. 74, 215 S.W.2d 840 (1948), holding that a wife could testify as to seeing her husband conceal a weapon in his coat as he left the house. Our Court held that this testimony was permissible because the act was "not peculiarly known to [his wife] because of the marriage relation." *Id.,* at 841.

However, we need not decide which portions of the written statement given by Cindy Estes', appellant's wife, are confidential communications and which are not, because the entire statement is impaled upon the second prong of KRS 421.210(1). Cindy Estes has invoked her privilege not to testify against her husband about any relevant matter in this case. As stated in *Lawson, supra,* § 5.05, at p. 127, this privilege is "[l]imited to neither communications nor matters learned as a consequence of the confidential nature of the marriage relationship."

No doubt the purpose underlying the statutory privilege was to preserve marital harmony by creating a privilege to protect the marriage after the ancient total testimonial disqualification was removed. But the privilege has a serious adverse effect; it prevents the court from developing the true facts. As stated in *McCormick, supra,* § 66, p. 145–46:

"The privilege is an archaic survival of a mystical religious dogma and of a way of thinking about the marital relation that is today outmoded."

Our Court has expressed its frustration and applied the rule narrowly in *Wells v. Commonwealth,* Ky., 562 S.W.2d 622, (1978), and more recently in *Richmond v. Commonwealth,* Ky., 637 S.W.2d 642 (1982).

In *Wells,* where the wife refused to testify against her husband, we held that her previous testimony given by deposition be-

fore marriage when the privilege did not exist, could be utilized as evidence, on the basis that she had made herself "unavailable" and thus rendered her deposition admissible.

In *Richmond,* a wife had freely given her sworn deposition in the case, subject to cross-examination, and then refused to testify at trial. We held the *Wells* case applicable stating:

"[I]n *Wells* the privilege did not exist when the previous testimony was given, whereas in this instance it existed but was waived. There is no difference in principle. In each case the evidence was good when given, and could not be made otherwise by subsequent events." 637 S.W.2d at 647.

The need to narrow the statutory privilege to refuse to testify is thus stated in *Wells:*

"[It] is one of the most ill-founded precepts to be found in the common law. It is enough that it continues to exist at all. When it is encountered it is better to be trimmed than enlarged." 562 S.W.2d at 624.

■ Nevertheless, while we may narrowly construe this statutory privilege, we cannot abolish it. Given the modern day circumstances of marriage,[1] perhaps the General Assembly Acts should consider revising it. But until this occurs, we must recognize Cindy's right to refuse to give testimony of any kind against her husband, without regard to whether it is a confidential communication. The difference between the present case and *Wells* and *Richmond, supra,* is that in those two cases "the evidence was good when given." In the present case the wife's testimony was not good evidence when given. It was an unsworn written statement taken by a police officer which did not qualify as admissible evidence under any rule of evidence. *Jett v. Commonwealth,* Ky., 436 S.W.2d

788 (1969) permits the use of a prior contradictory statement both to impeach and as substantive evidence, when a witness has testified, but this does not apply to the present situation. Cindy Estes has invoked a statutory privilege which is the testimonial equivalent of the constitutional privilege against self-incrimination.[2] As we stated in *Commonwealth v. Brown,* Ky., 619 S.W. 2d 699, 704 (1981), we cannot extend the *Jett* principle to the situation where a witness lawfully invokes the privilege against self-incrimination. To do so "denies [the accused] the right of confrontation secured by Section 11 of our Constitution and the Sixth Amendment to the federal Constitution." *See also,* to the same effect, *Mayes v. Sowders,* 621 F.2d 850 (6th Cir., 1980).

The principle in *Jett* does not extend, and cannot be extended, to cover a situation where a witness refuses to testify for a valid reason. The wife's statement to the police officer was hearsay, and there is no vehicle available to the Commonwealth to permit its use as evidence against the accused. It must be excluded in its entirety, unless the wife elects to testify and it then becomes relevant under *Jett.*

Since the within case is reversed and remanded because of error in admitting the statement made by the appellant's wife to the police officer, it becomes necessary to discuss those remaining errors which might impact a new trial.

■ The appellant claims that if the wife's statement to the police officer is excluded, he is entitled to a judgment of acquittal on the lesser included offense of first-degree manslaughter for which he was convicted. Whereas a conviction based on insufficient evidence may require a judgment of acquittal upon reversal, this is not the rule where the conviction has been set aside for trial error. Reversal of a judgment of conviction on the ground that evidence to support the conviction was

---

1. This privilege is particularly reprehensible where parties entered into a marriage subsequent to an offense, thus permitting marriage as a device to prevent testimony. Surely the legislature should amend the statute to prevent this abuse.

2. The prerogative under the statute applies exclusively to the testifying spouse, and not to the accused. *Hall v. Commonwealth,* 309 Ky. 74, 215 S.W.2d 840 (1948); *Taylor v. Commonwealth,* Ky., 302 S.W.2d 378 (1957).

erroneously admitted does not, on grounds of double jeopardy, prohibit a retrial. *Commonwealth v. Mattingly*, Ky., 722 S.W.2d 288 (1986). There was ample evidence that at the time of the shooting the appellant was enraged with jealousy, justifying an instruction on Manslaughter I as a lesser included offense of the murder charge. *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986).

Next, appellant complained that an investigating police officer was permitted to testify as to the contents of a conversation between appellant's wife and the victim, John O'Nan, overheard by the officer at the scene of the shooting and shortly after it occurred, the officer testified:

"... as soon as he [O'Nan] saw her [Cindy Estes] he reached out his left hand, which would have been the hand closest to Cindy, and said Cindy he [the appellant] said he was going to do it didn't he. Her response at that point was I know. She just nodded her head and said I know."

■ It was within the discretion of the trial court to admit this testimony under a combination of three hearsay exceptions: (1) dying declarations, (2) excited utterances, and (3) O'Nan's statement did not establish the *truth* of what was said, but it was admissible for the *fact* that it was said as a predicate to Cindy Estes' response.

■ In *Roberts v. Commonwealth*, 301 Ky. 294, 191 S.W.2d 242 (1945), we held that dying declarations on the border line between fact and opinion should be admitted and the decision to exclude such statements as opinion evidence should be reached only grudgingly. Cindy Estes' reply is not foreclosed even if viewed as a response to a question, because this is only one of the considerations in deciding whether a statement qualifies as admissible under the excited utterance exception to the hearsay rule. Other circumstances such as "... lapse of time between the main act and the declaration, the opportunity or likelihood of fabrication, the inducement to fabrication, the actual excitement of the declarant, the place of the declaration, the presence there of visible results of the act

or occurrence to which the utterance relates, ..." are also important. *Roland v. Beckham*, Ky., 408 S.W.2d 628, 632 (1966). Thus there were ample other circumstances justifying admission of the evidence as an exception to the hearsay rule. A person who has overheard a conversation between a husband and wife is not foreclosed from testifying about it because of the husband/wife privilege. *Commonwealth v. Everson*, 123 Ky. 330, 96 S.W. 460 (1906). *A fortiori*, here the police officer who overheard a conversation between the wife and the husband's victim is not foreclosed from repeating what she overheard regardless of whether the contents of the conversation include confidential communications between husband and wife.

■ Next we consider the appellant's complaint that the prosecutor's closing argument was improper. The prosecutor quoted from the Old Testament, the Book of Numbers, to the effect that when a man kills out of hatred, "[t]he avenger of blood may execute the murderer on sight." He then told the jury "you have to act as the avenger of blood on behalf of the O'Nan family" and "they are entitled to an avenger of blood acting for them." This type of argument, demanding a conviction based on religious beliefs rather than legal grounds, is prohibited, and, depending on the circumstances, reversible error. *May v. Commonwealth*, Ky., 285 S.W.2d 160 (1955); *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984).

■ Further, we agree with the appellant that asking the jury to put themselves in the shoes of the victim's family is an impermissible "golden rule" type of argument, the legal equivalent of asking the jury to put themselves in the place of the victim. *See Anderson v. Commonwealth*, Ky., 194 S.W.2d 530 (1946); *Lycans v. Commonwealth*, Ky., 562 S.W.2d 303 (1978).

We affirm the decision of the Court of Appeals reversing and remanding the within case for a new trial.

STEPHENS, C.J., and LAMBERT, LEIBSON and VANCE, JJ., concur.

STEPHENSON, J., dissents by separate opinion in which GANT and WINTERSHEIMER, JJ., concur.

STEPHENSON, Justice, dissenting.

The majority opinion for all practical purposes permits the perpetrator of a cold-blooded, premeditated murder to go free. The granting of a new trial when this court has ruled out the only inculpatory evidence is effectively dismissing the case. The jury found Estes guilty of first-degree manslaughter, and he was sentenced to ten years' imprisonment.

It is apparent that the jury at least partially applied the "unwritten law" which in former years might have resulted in acquittal.

Technically, the majority opinion can be justified. However, this court could get around the effect of KRS 421.210(1) if a majority wished to do so. Surely a court that can find a witness "unavailable" when the witness, a wife, is present but refuses to testify, as in *Wells* and *Richmond*, could find a way to admit this statement. The fact that the depositions there were given under oath and the statement here unsworn should have no effect whatsoever. If the only difference is as cited in the majority that "the evidence was good when given," then there is no valid reason why the statement given by the wife could not be introduced into evidence if the wife, when called as a witness, refuses to answer questions about the statement. This would require an expansion of *Jett*, but after all, when it was rendered *Jett* was a radical departure from traditional rules of evidence. That *Jett* is a reasonable and rational rule of evidence is not questioned now. In cases where the wife exercises her statutory right not to testify, *Jett* can logically be expanded to render the facts contained in the statement admissible.

The majority equates the wife's refusal to testify with a witness' lawfully invoking the privilege against self-incrimination. This is a strained equation but necessary before the majority can invoke the "right of confrontation" clause of the constitution as the clincher on the assertion that *Jett* cannot be extended to cover this situation.

This is not a self-incrimination situation; the refusal to testify is for the *benefit* of the defendant husband. Attempting to assert a *confrontation* issue in these circumstances would be a fraud on the court. The wife who refuses to testify in order to prevent conviction of her husband in these circumstances could not in good faith decline cross-examination if the statement was ruled admissible in an expansion of *Jett.*

The statute presents no problem where the wife has not made a statement or been deposed. However, where in *Hall* and *Richmond* the wife reveals the facts and here where the wife has made a statement, there is no injustice in permitting the jury to hear the testimony. There is nothing unfair about this.

Adopting what I consider to be the proper rule in expanding *Jett* requires a look at the statute and what it really excludes.

The majority opinion is a little short on a recitation of the facts. Brevity is to be commended, but sometimes it is desirable to include all the facts which, according to the wife's statement to the police, are as follows: She stated that she and O'Nan had been lovers for some time and that their relationship had caused many problems in her marriage. On the day of the shooting, she claims that Frank Estes had encouraged her to call John O'Nan to set up a meeting with him so that they could "talk." She asked Frank Estes whether or not he was going to do anything stupid, and he replied, "No." Thereafter, Cindy Estes called O'Nan and arranged to meet him in twenty minutes at a nearby car lot. She did not reveal to him the purpose of the meeting or that Frank would be there. After she hung up the phone, Cindy Estes claims she saw her husband grab his gun and head for the door. At this point, she told him that if he left with the gun she was going to call O'Nan back and tell him not to come. Frank replied that she couldn't call O'Nan, and he cut the telephone cord. Cindy stated that she then

watched her husband get into their truck and head in the direction of the car lot. She began walking toward the lot and eventually heard a gunshot coming from that direction. As she approached, Cindy testified, she saw O'Nan lying on the ground.

The only eyewitness to the incident stated that after the shooting he saw a man with long hair wearing a dark jacket, jeans, and a shoulder harness with a long gun in it. The man was walking into the woods. He could not identify the man. This testimony was supported by policewoman Dunbar who stated that Cindy told her that her husband was wearing a Levi jacket, blue jeans, and a baseball cap and carrying his gun in a "sling" when he left the house that day.

Thus we should interpret the pertinent part of the current statute which reads:

In all actions between husband and wife, or between either or both of them and another, either or both of them may testify as other witnesses, except as to *confidential communications* between them during marriage, .... (emphasis added). KRS 421.210(1).

Under today's marital privilege, spouses are free to testify for or against their partner if they so desire. Anything that constitutes a confidential communication between spouses, however, is privileged.

It must be determined what constitutes a "confidential communication" under KRS 421.210(1).

We first addressed the meaning of "communication," as contemplated by the statutory marital privilege, in *Commonwealth v. Sapp*, 90 Ky. 580, 585, 14 S.W. 834, 835 (1890). There it was held that the marital privilege includes all knowledge obtained by a spouse by virtue of the marriage. We stated:

The word "communication," therefore, as used in our statute, should be given a liberal construction. It should not be confined to a mere statement by the husband to the wife or vice versa; but should be construed to embrace all knowledge upon the part of the one or the other obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known to the party.

This broad construction of the term "communication" has been followed in subsequent cases.

I am of the opinion that *Sapp* and the cases that follow it construe the statute too broadly. In *Wells v. Commonwealth*, Ky., 562 S.W.2d 622 (1978), there is the following dicta which demonstrate that we have previously given this matter some thought:

At its very best, the rule that one party to a marriage cannot be compelled to testify against the other, codified in KRS 421.210, is one of the most ill-founded precepts to be found in the common law. It is enough that it continues to exist at all. When it is encountered it is better to be trimmed than enlarged. Least of all should it be allowed as a gambit to expunge evidence that was perfectly proper and admissible when given.

I am of the opinion that we should now adopt the above reasoning and construe the statute narrowly in accordance with its terms.

KRS 421.210(1) states that only "confidential communications" are protected by the marital privilege. Webster's Dictionary defines "communication" as the "giving or exchanging of information, signals or messages by talk, gestures, writing, etc." "Confidential" is defined as "communicated in confidence ... secret." Using these definitions, we should hold that only verbal exchanges and affirmative nonverbal exchanges which are intended to relay some thought between spouses are protected by the marital privilege under KRS 421.210(1). Actions which are described at trial, such as getting a gun and walking out the door, as in this case, are not communications to the other spouse and, therefore, are not protected. *Sapp* and all other cases in conflict with this decision should be overruled.

Further, as to confidentiality, in *Gill v. Commonwealth*, Ky., 374 S.W.2d 848 (1964), we held that any action, occurrence, or verbal exchange between spouses that

could have been seen or heard by a third person is not protected by the marital privilege. Once someone other than the spouse has been exposed to the communication, it loses its confidentiality.

I am of the further opinion that communications between husband and wife which relate to actions which are not privileged and which could be testified to in such a way as to be presented to the jury by inference are not privileged. For example, Frank Estes' request of Cindy to call O'Nan and arrange a meeting will be understood by the jury in any event after Cindy's testimony regarding her actions.

Using this test, all of the matters in the statement are outside the scope of the statutory privilege. The facts that Cindy saw what her husband was wearing, watched him get his gun, cut the telephone cord, and leave in a certain direction to meet O'Nan are not protected by KRS 421.210(1) for the reason those facts are not "communications" between spouses.

I would reverse the case for a new trial, as I agree with the majority opinion in the remarks regarding the residual hearsay rule. However, I would accord the Commonwealth the right on a new trial to call the wife as a witness and, if she refuses to testify, invoke the principles of *Jett* in order to give the jury the benefit of her statement to the police.

Accordingly, I dissent.

GANT and WINTERSHEIMER, JJ., join in this dissent.