Joseph **DAWSON**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

No. 92–CA–001840–DG.

Court of Appeals of Kentucky.

Dec. 3, 1993.

Barbara Anderson, Lexington, for appellant.

Chris Gorman, Atty. Gen., Frankfort, Jennifer L. Fletcher, Patsey Yewell, Sp. Asst. Attys. Gen., Lexington, for appellee.

Before LESTER, C.J., and HUDDLESTON and HOWERTON, JJ.

## OPINION

HUDDLESTON, Judge.

Joseph Dawson was convicted by a Fayette District Court jury of fourth degree assault of his wife and of resisting arrest. Upon the jury's recommendation, he was sentenced to ninety days in jail on the assault charge and to a $500.00 fine on the charge of resisting arrest. His convictions were affirmed upon appeal to Fayette Circuit Court. We granted discretionary review to decide whether the district court erred when it admitted statements made to the police by Dawson's wife, Bonnie, who declined to testify at trial.

Joseph Dawson spent October 1, 1991, playing golf and drinking beer. When Dawson returned home late that evening, his wife Bonnie was understandably angry and they argued about his tardiness. Dawson testified that as the argument continued Bonnie grabbed him by the hair and he seized her arms. Once free from Bonnie's grasp, Dawson locked himself in the bathroom.

Lexington police officer Mark White responded to a call from the Dawson residence. Upon arrival, White saw clothes strewn about the yard and Bonnie Dawson standing in the front doorway. He asked Bonnie what had happened. She replied that her husband had been drinking and had grabbed her by the arms and hit her in the stomach. White observed red marks and a cut on Bonnie's arms, and testified that she appeared angry and upset.

Officer White explained to Bonnie that if she signed a domestic violence report, he could arrest her husband and remove him from the house. Bonnie agreed to complete the report. As Officer White escorted Dawson to the Fayette detention center, Bonnie filled out the domestic violence report with the assistance of another Lexington police officer, Tim O'Bryan, who had by then arrived at the scene.

At trial Bonnie refused to testify against her husband, and apparently no attempt was made to compel her to do so. At the Commonwealth's insistence, however, the district court permitted the two police officers present at the Dawson home to repeat the statements made by Bonnie that evening. The court also admitted the domestic violence report in evidence. The trial court's rationale was that Bonnie's statements, while hearsay, were nonetheless admissible as excited utterances. Dawson challenges that ruling on appeal.

## I

■ The first obstacle which must be overcome if Bonnie's statements to the police are to be admitted in evidence is posed by KRS 421.210(1), a statute in effect when Dawson was tried on December 26, 1991. The statute, which relates to the competency of certain testimony, contains two distinct spousal privileges. The first protects confidential marital communications from disclosure. The second provides that neither a husband nor wife can be compelled to testify

for or against the other. This case involves the spousal testimony privilege.[1]

The spousal testimony privilege "provides a witness with a near absolute right to refuse testimony for or against a spouse...." Robert G. Lawson, *Kentucky Evidence Law Handbook* § 5.05 (2d ed. 1984). But the Supreme Court has declined to extend the scope of the privilege to previously-given testimony, whether in the form of a deposition or previous trial testimony. See *Richmond v. Commonwealth*, Ky., 637 S.W.2d 642 (1982) and *Wells v. Commonwealth*, Ky., 562 S.W.2d 622 (1978). In both cases, a wife gave adverse testimony before trial. At trial, she refused to testify against her husband under her statutory spousal testimony privilege. In each instance, the Court held that the privilege did not protect testimony given before invoking the privilege. *Richmond*, 637 S.W.2d at 647; *Wells*, 562 S.W.2d at 624. In *Wells*, as in *Richmond*, the Court narrowly applied the marital privilege, characterizing it as "one of the most ill-founded precepts to be found in the common law...." *Wells*, 562 S.W.2d at 624. The Court cautioned that "[w]hen it is encountered it is better to be trimmed than enlarged." *Id.*

Surprisingly, given the reservations about the efficacy of the privilege expressed by the Supreme Court in *Wells* and *Richmond*, its scope was expanded in *Estes v. Commonwealth*, Ky., 744 S.W.2d 421 (1988). There the Court held that otherwise admissible hearsay statements may not be received in evidence once a witness has invoked the spousal testimony privilege.

This case, like *Estes*, involves the admission of statements made by a wife who at trial declined to testify. However, unlike *Estes*, this case involves spouse abuse. KRS 209.060, which is a part of the Kentucky Adult Protection Act, provides that "the husband-wife privilege shall [not] be a ground for excluding evidence regarding the abuse, neglect, or exploitation of an adult...." This statute reflects the policy that in cases

of abuse the privilege may not be used to shield an abuser. Bonnie thus had no right to refuse to testify. Had the Commonwealth insisted, the district court could have taken steps to compel her testimony.

The privilege contained in KRS 421.210(1) is deeply rooted in the common law. Its purpose is to protect marital harmony. In cases involving violence between spouses, the privilege acts to protect a marriage in which there is little harmony. KRS 209.060 is a realization of this fact, and it is an acknowledgement that in cases where the privilege's purpose is defeated, the privilege should not operate. The new Kentucky Rules of Evidence[2] continue this policy. Under KRE 504(c)(2), the spousal privilege is similarly inapplicable in cases of abuse. In adopting KRE 504(c)(2), the General Assembly has recognized, as it did in enacting KRS 209.-060, that a privilege designed to preserve marriages should not apply to cases where violence has replaced marital harmony. Because of KRS 209.060, the spousal testimony privilege does not apply to this case. It follows that Bonnie Dawson's statements to the police are not subject to exclusion because of the spousal testimony privilege.

## II

■ The second obstacle which must be overcome if Bonnie's statements to the police are to be received in evidence is posed by the hearsay rule. Hearsay is an out-of-court statement offered for the truth of the matter asserted and made by a declarant other than the testifying witness. Such evidence is normally inadmissible due to its unreliable character.

Exceptions to the hearsay rule have developed for specific types of statements with trustworthy characteristics. One such category is the excited utterance exception. This exception grew out of the doctrine of "res gestae," which loosely described a broad category of statements considered trustworthy due to their close relationship to a startling

---

1. Fayette Circuit Court's discussion of the meaning of "communication" in its analysis of Bonnie Dawson's spousal privilege is not on target. Unlike the marital communication privilege, the privilege granted a husband or wife by KRS

421.210(1) to refuse to testify against his or her spouse is not limited by the word "communication."

2. Adopted July 1, 1992.

event. This broad term has fallen into disuse for it has become "a useless and misleading shibboleth...." *Preston v. Commonwealth*, Ky., 406 S.W.2d 398, 400 (1966). While courts have abandoned the term "res gestae," they have widely accepted the excited utterance exception.

In *Souder v. Commonwealth*, Ky., 719 S.W.2d 730 (1986), the Supreme Court outlined the elements necessary to invoke the excited utterance exception to the hearsay rule. The statement must be "uttered under the stress of nervous excitement and not after reflection or deliberation." *Id.* at 733 (adopting the definition found in Robert G. Lawson, *Kentucky Evidence Law Handbook* § 8.60(B) (2d ed. 1984)). The statement and the startling event must be so connected that the declarant is reacting to the event and has had no opportunity to reflect upon or fabricate the statement. A spontaneous statement is considered trustworthy because "a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock." *Preston*, 406 S.W.2d at 401.

Spontaneity is the central element to the excited utterance exception.

> Whether or not a given statement is 'spontaneous' depends upon an evaluation of the particular circumstances under which it was made, with the following circumstances most significant: (i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

*Preston*, 406 S.W.2d at 401.

The altercation that took place between Bonnie and Joseph Dawson was certainly a startling event. The central question before this Court is whether the trial court erred

when it found that Bonnie Dawson was operating under the excitement of the event when she spoke to the police officers and completed the domestic violence report. Officer White arrived at the Dawson home within five minutes after receiving a call from a dispatcher. The officer testified that when he arrived, Bonnie was upset and crying. Upon his initial inquiry, Bonnie told Officer White that her husband was drunk and that he had grabbed her arms, punched her in the stomach and dragged her on the ground.

The evidence supports a finding that Bonnie Dawson was still under the influence of the assault and did not reflect upon or fabricate the statement made to Officer White. Although some time had elapsed between the argument with Joseph and White's arrival, clearly the excitement of the argument was still affecting Bonnie. She was visibly upset, and the person who had assaulted her—her husband—was still present in the house.

One factor, however, weighs against admission of Bonnie's statement under the excited utterance exception: her statement was made in response to White's question. Upon balancing all the circumstances, this factor does not defeat the admissibility of her statement. Officer White did not launch into an interrogation upon meeting Bonnie Dawson at her front door. He simply made a preliminary inquiry to evaluate the situation. His brief inquiry did not destroy the spontaneity of Bonnie's statement. In short, we are satisfied that the trial court did not err in admitting Bonnie's statement to Officer White.

 The trial court did err when it admitted Bonnie's statements to Officer O'Bryan and her statements incorporated into the domestic violence report. These statements do not fit within the excited utterance exception to the hearsay rule. Officer O'Bryan arrived at the Dawson home after Officer White. He did not speak with Bonnie until after White left with Dawson. At that point, the entire sequence of events surrounding the assault had come to an end and a significant amount of time had passed. Dawson had been removed from the house and Bonnie no longer feared further assault.

After Dawson was arrested, the atmosphere calmed. The statements made to O'Bryan lacked the spontaneity required by the excited utterance exception. Likewise, the very nature of a formal written report suggests that it lacks spontaneity.

■ Although the statements made to Officer O'Bryan should not have been admitted, the error was harmless and may be ignored under RCr 9.24.[3] In substance, the statements made by Bonnie Dawson to Officers White and O'Bryan do not differ; and the domestic violence report contains substantially the same statements given to the officers. Because the admission of O'Bryan's testimony and the domestic violence report did not present the jury with information it did not already have by way of properly admitted evidence, the error resulting from the admission is harmless.

The judgment is affirmed.

All concur.

---

**3.** RCr 9.24 provides that: "No error in either the admission ... of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties."